UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OLENA ZYNOVIEVA,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF STATE,<br><br>*Defendant*. | Civil Action No. 19-3445 (RDM) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Olena Zynovieva submitted a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the U.S. Department of State ("the Department"), seeking records concerning her own prior visa applications. The Department withheld all but three of the records responsive to Plaintiff's request under FOIA Exemption 3 and Section 222(f) of the Immigration and Nationality Act ("INA"), which requires the Department to keep confidential records "pertaining to the issuance or refusal of visas," 8 U.S.C. § 1202(f). In this action, Plaintiff challenges those withholdings, and the parties have cross-moved for summary judgment. Rather than justify its withholdings on a document-by-document basis, the Department issued a "no number, no list" response, in which it identifies the categories of visa-processing records that the Department generally maintains and attests that the withheld records all fall within those categories, but does not disclose the number or specific nature of each withheld record. This approach appears to be a novel one, and, at least on the present record, the Court is not satisfied that the Department's refusal to describe the records at issue in greater detail was necessary to protect information exempt from disclosure. The Court thus concludes that the Department has not yet carried its burden to justify its withholdings under FOIA Exemption 3 and the INA. At

1

the same time, however, it appears likely that some or all of the records in question are protected by Exemption 3, and thus it would be premature to grant summary judgment to Plaintiff. The Court will, accordingly, **DENY** the Department's motion for summary judgment, Dkt. 15, and will also **DENY** Plaintiff's cross-motion for summary judgment, Dkt. 16.

## I. BACKGROUND

Plaintiff is a citizen of Ukraine and a resident of the United Arab Emirates. Dkt. 1 at 2 (Compl. ¶ 2). Acting through counsel, she submitted a FOIA request to the Department on August 13, 2019. Dkt. 15-2 at 1 (Def.'s SUMF ¶ 1). That request sought all information in the Department's Consular Lookout and Support System ("CLASS") database concerning herself, as well as all documents in the Department's files that Plaintiff had submitted in connection with her past visa applications, from 2009 to the present. *Id.*; *see also* Dkt. 15-3 at 2–3 (Stein Decl. ¶ 4). According to the Department, the CLASS database "is used by the Department of State and other agencies to perform namechecks on visa and passport applicants to identify individuals who may be ineligible for issuance or require other special action." Dkt. 15-1 at 8; Dkt. 15-2 at 1 (Def.'s SUMF ¶ 2).

Having received no response to her request, Plaintiff filed this lawsuit on November 15, 2019. Dkt. 1. The Department responded to her FOIA request on March 12, 2020. *Id.* 15-2 at 2 (Def.'s SUMF ¶ 4). The Department produced three records in part, totaling eleven pages. *Id.* Those records were copies of visa application forms that Plaintiff had submitted to the Department in 2009, 2015, and 2016. Dkt. 16-2 at 6 (Pl.'s SUMF ¶ 38). The Department withheld all information about the other visa records responsive to Plaintiff's request, including the number of such records, pursuant to FOIA Exemption 3. Dkt. 15-2 at 2 (Def.'s SUMF ¶ 4). That exemption applies to records "specifically exempted from disclosure by statute," so long as

the statute in question "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).  Here, the Department invoked § 222(f) of the INA, which provides that:

> The records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States, except that [such records may be provided to courts or foreign governments in certain circumstances].

8 U.S.C. § 1202.

The Department then moved for summary judgment with respect to its withholdings, Dkt. 15, and Plaintiff cross-moved for summary judgment, Dkt. 16.  In support of its motion, the Department submitted a declaration from Eric F. Stein, who is the Director of the Department's Office of Information Programs and Services.  Dkt. 15-3 (Stein Decl.).  In response to certain arguments raised in Plaintiff's cross-motion, the Department submitted a supplemental declaration from Susan C. Weetman, the Office's Deputy Director, with their reply brief.  Dkt. 19-1 (Weetman Decl.).  Generally, evidence submitted in reply comes too late.  *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008).  But here, because the Department moved for summary judgment first, Plaintiff had an opportunity to—and in fact did—respond to the Department's supplemental filing in her final reply brief.  Dkt. 22.  As such, the Court will consider both declarations in deciding the pending motions, which are now ripe for decision.

## II.  LEGAL STANDARD

Congress enacted FOIA "to ensure public access to a wide range of government reports and information[,] . . . to pierce the veil of administrative secrecy[,] and to open agency action to

the light of public scrutiny." *Bartko v. DOJ*, 898 F.3d 51, 61 (D.C. Cir. 2018) (quotation marks and citations omitted). "The basic purpose of FOIA is to ensure an informed citizenry, [which is] vital to the functioning of a democratic society[] [and] needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Simply put, "FOIA protects the basic right of the public 'to be informed about what their government is up to.'" *Hall & Assocs. v. EPA*, 956 F.3d 621, 624 (D.C. Cir. 2020) (quoting *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 827 F.3d 145, 150 (D.C. Cir. 2016)). FOIA "requires agencies to disclose records upon request," unless those records "fall within one of nine exemptions," which the Court construes narrowly. *Pavement Coatings Tech. Council v. U.S. Geological Surv.*, No. 20-5035, 2021 WL 1823300, at *4 (D.C. Cir. May 7, 2021) (citations omitted). The agency bears the burden of justifying its withholdings, and the Court reviews an agency's decision to withhold records or portions of records de novo. 5 U.S.C. § 552(a)(4)(B); *Loving v. DOD*, 550 F.3d 32, 37 (D.C. Cir. 2008).

FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56. *Shapiro v. DOJ*, 153 F. Supp. 3d 253, 268 (D.D.C. 2016). To prevail on a summary judgment motion, the moving party must demonstrate that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In a FOIA case, a court deciding a summary judgment motion must "ascertain whether the agency has sustained its burden of demonstrating that the documents requested are . . . exempt from disclosure." *ACLU v. DOJ*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quotation marks omitted). An agency can carry its burden and prevail on a motion for summary judgment by presenting affidavits that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld

logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Elec. Frontier Found. v. DOJ*, 739 F.3d 1, 7 (D.C. Cir. 2014) (quotation marks omitted).  In many cases, an agency may carry its burden by providing a *Vaughn* index that "elucidates, on a document-by-document basis, the rationale for the FOIA exemptions claimed." *Hall & Assocs. v. EPA*, No. 18-cv-1749, 2021 WL 1226668, at *3 (D.D.C. Mar. 31, 2021) (citing *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973)). "The description and explanation the agency offers should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection." *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996).

### III. ANALYSIS

The Department withheld all but three records responsive to Plaintiff's request under Exemption 3 and 8 U.S.C. § 1202(f).  Exemption 3 applies to records "specifically exempted from disclosure by statute," so long as the statute in question "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).  Plaintiff does not dispute—and D.C. Circuit precedent makes clear—that 8 U.S.C. § 1202(f), which protects the confidentiality of records related to visa processing, qualifies as a withholding statute under Exemption 3.  *See* Dkt. 15-1 at 11; Dkt. 16-1 at 19; *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 740–41 (D.C. Cir. 1983).

Plaintiff contends, however, that the Department has not carried its burden of demonstrating that the records withheld in this case fall within the scope of 8 U.S.C. § 1202(f). Dkt. 16-1 at 11.  In his declaration, Stein asserts that "disclosing the number of responsive visa records, or describing those records in a *Vaughn* index, would reveal information that [§ 1202(f)]

5

requires the Department to keep confidential." Dkt. 15-3 at 6 (Stein Decl. ¶ 13). For that reason, the Department "is not able to provide a *Vaughn* index of the records withheld in response to this particular FOIA request." *Id.* Instead, the Department provides a table that lists thirteen categories "of visa records that are generally kept (as opposed to in reference to this individual case)" and asserts that "[t]he record(s) being withheld in this case each correspond to one of the document types described in [that] table." *Id.* at 6–7 (Stein Decl. ¶¶ 13–14). The Department contends that this type of "no number, no list" response is justified in "rare cases" where "information about the number or content of withheld responsive records would reveal information exempt from disclosure." *Id.* at 7–8 (Stein Decl. ¶ 17); Dkt. 15-1 at 13 ("The Department's refusal to identify the number of the records at issue was appropriate . . . because disclosing the number of withheld records or providing a description of each of those records would reveal information that § 1202 requires the Department to keep confidential."). Plaintiff responds that the Department's "vague affidavit outlines only documents that *might* be in its files and concerns that *might* justify its withholdings." Dkt. 16-1 at 6. She argues that the Department cannot carry its burden under FOIA while "refus[ing] to provide any detail about the remainder of the records that it is withholding." *Id.*

As a general matter, a document-by-document *Vaughn* index, or a detailed declaration that approximates a *Vaughn* index, plays an important role in FOIA litigation. As the D.C. Circuit has explained, "the typical FOIA case 'distorts the traditional adversary nature of our legal system's form of dispute resolution.'" *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 145–46 (D.C. Cir. 2006) (quoting *King v. DOJ*, 830 F.2d 210, 218 (D.C. Cir. 1987)). A FOIA requester "'faces an asymmetrical distribution of knowledge' where the agency alone possesses, reviews, discloses, and withholds the subject matter of the request." *Id.* at 146 (quoting *King*, 830 F.2d at

6

218). As such, the agency would possess "a nearly impregnable defensive position save for the fact that the statute places the burden 'on the agency to sustain its action.'" *Id.* (quoting 5 U.S.C. § 552(a)(4)(B)). On the other hand, "the agency has the difficult obligation to justify its actions without compromising its original withholdings by disclosing too much information." *Id.* A *Vaughn* index balances these competing interests and therefore "restore[s] a healthy adversarial process" by "forc[ing] the government to analyze carefully any material withheld;" "enabl[ing] the trial court to fulfill its duty of ruling on the applicability of the exemption;" and "giving the requester as much information as possible, on the basis of which [she] can present [her] case to the trial court." *Id.* (internal quotation marks omitted).

An agency's withholdings under Exemption 3 are sometimes amenable to more categorical treatment. As the D.C. Circuit has recognized, "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978). Nevertheless, an agency invoking Exemption 3 must demonstrate its applicability in a "nonconclusory and detailed fashion," *id.* at 351, and must provide "the kind of detailed, scrupulous description [of the withheld documents] that enables a District Court judge to perform a searching de novo review," *Church of Scientology of Ca., Inc. v. Turner*, 662 F.2d 784, 786 (D.C. Cir. 1980). At bottom, no matter what form an agency's submissions in support of its withholdings take, the agency must "give the reviewing court a reasonable basis to evaluate the claim of privilege." *Gallant v. NLRB*, 26 F.3d 168, 172–73 (D.C. Cir. 1994).

The question here is whether the Department's "no number, no list" response, by identifying the categories of records that the Department generally maintains and averring that

the withheld records fall within some or all of those categories, has "give[n] the [Court] a reasonable basis to evaluate the claim of privilege." *Id.*

As an initial matter, although the Court draws some guidance from the limited discussion of "no number, no list" responses in a few prior cases, *see, e.g.*, *ACLU v. CIA*, 710 F.3d 422, 433 (D.C. Cir. 2013); *N.Y. Times Co. v. DOJ*, 756 F.3d 100, 121–23 (2d Cir. 2014), the Court concludes that those cases do not control the resolution of the pending motions, for several reasons. First, both *ACLU* and *N.Y. Times* dealt with FOIA requests for (mostly classified) records pertaining to the government's use of unmanned aerial vehicles to carry out targeted killings—subject matter that implicates national security interests of a higher order than are involved in routine visa processing. Second, the D.C. Circuit in *ACLU* did not approve the use of a "no number, no list" response but rather remanded for the District Court to consider the question in the first instance. *ACLU*, 710 F.3d at 434. Indeed, at the time that the court of appeals considered the issue, "[n]o government affidavit ha[d] yet been filed in th[e] case that even attempt[ed] to justify a 'no number, no list' response." *Id.* The D.C. Circuit merely observed in dicta that "[s]uch a response would only be justified in unusual circumstances, and only by a particularly persuasive affidavit." *Id.* at 433. In any event, both the Department and Plaintiff now seem to agree that *ACLU* is distinguishable. Although the Department relied on *ACLU* in its opening brief, Dkt. 15-1 at 16–17, its reply brief dismisses Plaintiff's effort to distinguish *ACLU* as "a straw man" because that case's discussion of "no number, no list" responses provides "inapt standards applicable to [] distinguishable circumstances," Dkt. 19 at 8–9. The Court thus concludes, as the parties now acknowledge, that no binding precedent squarely addresses the use of "no number, no list" responses in circumstances like those presented in this case.

8

That said, the D.C. Circuit's decision in *ACLU* does provide some helpful guidance for the Court's consideration of whether a "no number, no list" response was appropriate in the present circumstances. First, the Court can grant summary judgment to the Department only if its "no number, no list" response is sufficient to carry its burden of justifying its withholdings under FOIA. Second, given the D.C. Circuit's direction that such a response "would only be justified in unusual circumstances, and only by a particularly persuasive affidavit," the Department would need to demonstrate that withholding even the number of records at issue is necessary to protect "validly exempt information." *ACLU*, 710 F.3d at 433.

The Court begins with the adequacy of the Department's justification for its withholdings under Exemption 3. Contrary to Plaintiff's suggestions, the Court concludes that the Department is not necessarily required to produce a *Vaughn* index in this case. Even in opinions extolling the virtues of a *Vaughn* index, the D.C. Circuit has made clear that its "focus [is] on the functions of the *Vaughn* index," and "an agency may even submit other measures in combination with or in lieu of the index itself." *Jud. Watch, Inc.*, 449 F.3d at 146. And in *ACLU*, the D.C. Circuit observed that the "no number, no list" response itself "might be viewed as a kind of *Vaughn* index, albeit a radically minimalist one." 710 F.3d at 246. Nor is the agency necessarily required to justify its Exemption 3 withholdings on a document-by-document basis, given that "the sole issue for decision [under Exemption 3] is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland*, 607 F.2d at 350. As the D.C. Circuit has explained, "the government need not justify its withholdings document-by-document; it may instead do so category-of-document by category-of-document, so long as its definitions of relevant categories are sufficiently distinct to allow a court to determine whether the specific claimed exemptions are properly applied." *Gallant*, 26 F.3d at 173 (quotation marks,

9

citation, and alterations omitted). In situations in which "a claimed FOIA exemption consists of a generic exclusion, dependent upon the category of records rather than the subject matter which each individual record contains, resort to a *Vaughn* index is futile." *Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 152 (D.C. Cir. 1986). In short, "nothing in the case law dictates what form an agency's description of the bases for its withholdings must take, but, regardless of the form, the evidentiary material must provide 'the reviewing court a reasonable basis to evaluate [its] claim of privilege.'" *Pejouhesh v. U.S. Postal Serv.*, No. 17-cv-1684, 2019 WL 1359292, at *5 (D.D.C. Mar. 26, 2019) (alteration in original) (quoting *Gallant*, 26 F.3d at 173).

Here, the records withheld under § 1202(f) are amenable to categorical treatment. The statute shields from disclosure all records "pertaining to the issuance or refusal of visas," and thus any classes of records that by their nature always relate to visa processing are categorically exempt from disclosure. But that does not necessarily mean that the Stein and Weetman declarations adequately justify the Department's withholdings on a categorical basis, such that the Department has carried its burden of demonstrating that Exemption 3 and § 1202(f) apply to the withheld records. To carry its burden, the Department must "reveal as much detail as possible as to the nature of the document[s], without actually disclosing information that deserves protection." *Oglesby*, 79 F.3d at 1176.

The Court concludes that the Department has not yet done enough to justify its withholdings. As noted above, under Exemption 3, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage," *Goland*, 607 F.2d at 350, but the Department still must demonstrate that Exemption 3 applies in a "nonconclusory and detailed fashion," *id.* at 351, that permits meaningful judicial review. Here, Stein lists thirteen "types of visa records" that the Department generally maintains. Dkt.

10

15-3 at 6–7 (Stein Decl. ¶ 13). He describes each category in reasonably specific detail. For instance, "Hit Text Reports" provide "fingerprint results requested in the course of processing visa applications," while "Independent Lookout Accountability" provides "the status of background checks conducted in the course of processing visa applications." *Id.* at 6. Stein goes on to attest that the specific records withheld in this case "each correspond to one of the document types described in the above table." *Id.* at 7 (Stein Decl. ¶ 14). Although twelve of the thirteen category descriptions refer to visa processing, the description for "Law Enforcement Database System Report" indicates only that such reports contain "biographic information, biometric indicators, and encounter data consolidated from various interagency systems for individuals," without specifically mentioning visas. *Id.* at 6 (Stein Decl. ¶ 13). To clear up any ambiguity, however, Weetman declares that, "[t]o state it explicitly, the record(s) withheld here are all visa records, pertaining to the issuance or denial of a visa." Dkt. 19-1 at 2 (Weetman Decl. ¶ 5). The Department agues that this is enough to establish that all of the records it withheld fall into a category of records that pertains to the adjudication of visa applications, which is all that § 1202(f) requires.

      Plaintiff responds that the Department has failed to carry its burden because the Department "has not even identified which of the various categories of documents actually are in its files—just types of documents that *might* be." Dkt. 22 at 19. It is true that the Department does not identify precisely which of the thirteen categories of records encompass the documents at issue here. But in the circumstances of this case, that might not matter. So long as all thirteen categories include records that pertain exclusively to visa processing, and so long as each of the contested records falls into one of those categories, then all of those records are shielded from disclosure under Exemption 3 and § 1202(f).

11

With all of that said, however, the Court is still unpersuaded that the Department has "giv[en] the requester as much information as possible, on the basis of which [she] can present [her] case to the . . . [C]ourt." *Jud. Watch, Inc.*, 449 F.3d at 146 (internal quotation omitted). Stein simply states in conclusory fashion that "[t]he record(s) being withheld in this case each correspond to one of the document types" described as relating to visas. Dkt. 15-3 at 7 (Stein Decl. ¶ 14). He does not say, however, who reviewed the records to make that determination or what knowledge or experience that person brought to the task. He does not say whether that person reviewed the responsive records one by one to ensure that each record fell into one of the thirteen categories or whether, instead, the person simply assumed that the records must fall into those thirteen categories, given that those are the "types of visa records that are generally kept," *id.* at 6 (Stein Decl. ¶ 13). Even if the Department cannot identify the number of records at issue, it can surely describe the nature of its processing of the records in greater detail. Such an explanation would give the Court greater confidence that the records Plaintiff seeks do, in fact, all relate to visas.

Next, the Court turns to whether the "no number, no list" response was necessary to protect important government interests in the present circumstances. Here again, the Court concludes that the Department has not done quite enough to justify its approach. The Department asserts that it cannot reveal the number or specific nature of the withheld records without disclosing information that § 1202 is meant to protect. Disclosing the number of records withheld, the Department contends, could reveal whether the adjudication of the visa application in question was straight-forward or more complex: "A small number of records would suggest that a decision was routine and made by the consular officer alone, while a large number of records would suggest that a decision was more complex and involved consultation with other

Department officials or other Executive Branch components." Dkt. 15-1 at 14. The Department argues that describing visa records in a *Vaughn* index, moreover, could reveal an array of other information, including "whether interagency consultation was required," "what kinds of documents were considered in determining an applicant's eligibility for a visa," "details about which specific Executive Branch components were involved in collecting or providing information that was used in the visa adjudication process," "details about the law-enforcement techniques that were used to collect information relevant to a particular visa adjudication," or "information about the factual predicates for particular visa denials, including the relevance of an applicant's activities or the applicant's sponsor's activities." *Id.* at 14–15.

Plaintiff responds that the Department is overblowing the extent of these risks. Plaintiff contends, for instance, that various factors other than the complexity of a visa denial could dictate the number of records in the file. Dkt. 16-1 at 16. According to Plaintiff, "older people or those who have sought various visas over the years presumably have more records on average than younger people or those who have lodged fewer visa requests." *Id.* And the Department "would surely deny a visa to a drug trafficker based on either a single document evincing a prior criminal conviction or on a set of 100 documents evincing that same trafficking." *Id.* But even if Plaintiff is correct that information in a *Vaughn* index describing visa records would be open to multiple interpretations, that does not necessarily undermine the Department's concern that the *Vaughn* index could give the public clues about the contents of visa files that § 1202 requires the Department to keep confidential.

The problem is that the Department has not adequately substantiated this concern, particularly in light of the novelty of the approach the Department urges the Court to endorse and the D.C. Circuit's observation that a "no number, no list" response is unlikely to pass muster

13

unless supported by "a particularly persuasive affidavit." *ACLU*, 710 F.3d at 433.  As Plaintiffs point out, the Department has revealed the number and nature of visa records in past cases.  *See, e.g.*, *Medina-Hincapie*, 700 F.2d at 739; *Soto v. U.S. Dep't of State*, 118 F. Supp. 3d 355, 360 (D.D.C. 2015); *Darnbrough v. U.S. Dep't of State*, 924 F. Supp. 2d 213, 215 (D.D.C. 2013).  And the Department acknowledges that it "has provided document-by-document *Vaughn* indexes in other cases dealing with records withheld under § 1202(f)."  Dkt. 19 at 13 n.3.  The Department explains, however, that "experience has shown that its prior practice caused the disclosure of confidential aspects of the visa adjudication process," and, "[a]s a result, it has prudently modified its practice to ensure the statutorily mandated confidentiality."  *Id.*  The Department does not say, however, how frequently such issues arose, or under what circumstances (or even types of circumstances).  Nor does the Department explain whether such concerns would be present in every case or only in some subset of cases, such that the Department could still provide a *Vaughn* index in certain types of visa cases.  The Department also fails to explain why it must take the "no number, no list" approach to all thirteen categories of visa records.  If certain forms appear in every (or almost every) visa file, then acknowledging the existence of such a form in a particular case would not give away any protected information.  The Court thus concludes that the Department has not demonstrated that a "no number, no list" response was necessary in this case to avoid disclosing information protected by the INA.

      Because the Department has not justified its withholdings, the Court will deny the Department's motion for summary judgment.  To the extent that the Department can justify its withholdings in more detailed declarations, it may renew its motion.  The Court will also deny Plaintiff's cross-motion for summary judgment.  In her briefing, Plaintiff argues only that the Court should require the Department to compile a *Vaughn* index.  *See, e.g.*, Dkt. 22 at 20.  Given

14

that Plaintiff does not even argue at this stage that she is entitled to disclosure of the contested records, it would be premature for the Court to grant her motion for summary judgment.

Before concluding, the Court will briefly address two additional issues—the adequacy of the Department's search and of its efforts to segregate exempt from nonexempt material—to give the parties guidance in renewing their motions for summary judgment. First, although the parties focus their attention on the propriety of the Department's withholdings, the Court in reviewing the record encountered one point of confusion about the adequacy of the Department's search. As noted above, Plaintiff sought records in the Department's CLASS database. Dkt. 15-3 at 2–3 (Stein Decl. ¶ 4). Stein explains that the Department's "[r]ecords relating to visa applications . . . are generally maintained in a central electronic database called the Consular Consolidated Database." *Id.* at 5 (Stein Decl. ¶ 11). Stein also states that the Department "maintains the CLASS system and the Non-Immigrant Visa . . . system." *Id.* One might read those two sentences as suggesting that the CLASS system is a component part of the Consular Consolidated Database, but Stein's declaration does not make that connection explicit. In responding to Plaintiff's FOIA request, the Department searched in the Consular Consolidated Database. *Id.* at 6 (Stein Decl. ¶ 11). If that database includes CLASS, then the search was likely adequate. But if the Consular Consolidated Database is something separate from CLASS, then the Department might have looked in the wrong place. In renewing its motion for summary judgment, the Department should clarify this point.

In contrast, the Court is unpersuaded by Plaintiff's contention that the Department has failed to meet its burden regarding segregability. *See* Dkt. 16-1 at 21–22. The Department must disclose "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Under D.C. Circuit precedent, the Court "must make specific

findings of segregability regarding the documents to be withheld" before "approving the application of a FOIA exemption." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007).  Here, Weetman explains that the Department "conducted a careful line-by-line review all of the records related to this FOIA request" and "ensured that any reasonably segregable, nonexempt information within these records was disclosed and determined that no further information from withheld or partially withheld responsive documents could be released." Dkt. 19-1 at 2 (Weetman Decl. ¶ 6).  Plaintiff relies on this Court's decision in *Pejouhesh*, which rejected a similarly phrased declaration as overly conclusory, *see* 2019 WL 1359292, at *8, to argue that the Department's "segregability showing amounts to 'trust us' in an affidavit," Dkt. 22 at 12.  The Court concludes, however, that this case is distinguishable from *Pejouhesh*.  Unlike the Exemption 7 withholdings at issue in that case, the Exemption 3 withholdings here are amenable to categorical consideration.  The INA renders confidential all documents, as a class, that pertain to visa processing, and the statutory provision covers those records in their entirety, not just specific portions.  It is thus difficult to imagine how a section of one of those exempt records, aside from Plaintiff's applications themselves, which have already been provided, could reasonably be segregable.

But because the Department must do more to support its "no number, no list" response and to support the adequacy of its search, the Court will defer making a final decision with respect to segregability until the record is complete and the universe of potentially responsive records is settled.  To avoid unnecessary litigation regarding segregability going forward, the Court encourages the Department to address this question directly with additional specificity at the next stage of the proceeding.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Department's motion for summary judgment, Dkt. 15, is **DENIED**, and that Plaintiff's cross-motion for summary judgment, Dkt. 16, is also **DENIED**.  It is further **ORDERED** that the parties shall file a joint status report on or before September 3, 2021, proposing next steps in this litigation, including a briefing schedule for renewed motions for summary judgment, if appropriate.

/s/ Randolph D. Moss
RANDOLPH D. MOSS

Date: August 5, 2021