**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

OLENA ZYNOVIEVA,

               *Plaintiff*,

      v.

U.S. DEPARTMENT OF STATE,

               *Defendant*.

Civil Action No. 19-3445 (RDM)

---

**<u>MEMORANDUM OPINION AND ORDER</u>**

This Freedom of Information Act ("FOIA") case is again before the Court, this time on Plaintiff Olena Zynovieva's motion for attorneys' fees and costs. Dkt. 39. Because Zynovieva is neither eligible for nor entitled to fees and costs, the Court will **DENY** her motion.

## I. BACKGROUND

Zynovieva is a Ukrainian citizen and resident of the United Arab Emirates. Dkt. 1 at 2 (Compl. ¶ 2). On August 16, 2019, she submitted a FOIA request to Defendant the U.S. Department of State, seeking all information in the Department's Consular Lookout and Support System ("CLASS") database concerning herself, as well as all documents the Department possessed that she had submitted in connection with her past visa applications, from 2009 to the present. *Id.* (Compl. ¶ 6); *Zynovieva v. U.S. Dep't of State*, No 19-3445, 2021 WL 3472628, at *1 (D.D.C. Aug. 5, 2021). Three days later, the Department confirmed receipt and provided her a tracking number. Dkt. 1 at 2 (Compl. ¶ 7).

After hearing nothing for several months, Zynovieva reached out to the Department at the end of October. *Id.* at 3 (Compl. ¶¶ 8–9). Her attorney contacted the Department by phone on

October 24, 2019, and the Department indicated that Zynovieva's request had been deemed "complex" and that no timeline had been established for providing a response. *Id.* (Compl. ¶ 9).

Several more weeks passed without word, so Zynovieva filed this lawsuit on November 15, 2019. Dkt. 1 (Compl.). She asked the Court to "order Defendant to disclose all records or portions thereof" to which she was "entitled under FOIA," declare that she is "entitled to the disclosure of the requested records," award her attorneys' fees and costs, and "provide further relief as it deem[ed] appropriate, just, and equitable." *Id.* at 5. The Department timely answered on December 23, 2019. Dkt. 9.

On March 12, 2020, the Department finally responded to Zynovieva's request. *Zynovieva*, 2021 WL 3472628, at *1. It produced three records, all of which were "copies of visa application forms that [Zynovieva] had submitted to the Department in 2009, 2015, and 2016." *Id.* Along with this production, the Department notified Zynovieva that it possessed other responsive records that it had not released. *Id.*; Dkt. 15-3 at 16 (Def.'s Ex. 2). With respect to these records, the Department provided a so-called "no number, no list" response. *Zynovieva*, 2021 WL 3472628, at *1; Dkt. 15-3 at 16 (Def.'s Ex. 2). As one might expect, a no number, no list response means that the Department did not say what other responsive records it had. Dkt. 15-3 at 16 (Def.'s Ex. 2). Rather, it stated only that it was withholding all such records under FOIA Exemption 3, which applies to records "specifically exempted from disclosure by statute"—here § 222(f) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1202. *Zynovieva*, 2021 WL 3472628, at *1 (quoting 5 U.S.C. § 552(b)(3)); Dkt. 15-3 at 16 (Def.'s Ex. 2).

The parties then cross-moved for summary judgment on the Department's remaining withholdings. Dkt. 15; Dkt. 16. The Department did not submit a *Vaughn* index—a detailed

declaration describing the withheld documents and bases for the government's withholding—in support of its motion. Dkt. 15-3 at 6 (Stein Decl. ¶ 13). Instead, it submitted a declaration that listed thirteen "types of visa records" that the Department generally keeps and stated that "[t]he record(s) being withheld in this case each correspond to one of the document types" listed. *Id.* at 6–7 (Stein Decl. ¶¶ 13–14). The declaration further explained that providing additional information "about the number or content of withheld responsive records would reveal information that must be kept confidential" under the INA. *Id.* at 8 (Stein Decl. ¶ 18). Zynovieva argued in opposition that the Department had failed to carry its burden of demonstrating that the withheld records fell within the scope of 8 U.S.C. § 1202 and requested that the Court order the Department to provide a *Vaughn* index, so that the propriety of its withholdings could better be assessed. *Zynovieva*, 2021 WL 3472628, at *3.

The Court denied both motions for summary judgment. *Id.* at *1. It explained that although, "[a]s a general matter," a *Vaughn* index "plays an important role in FOIA litigation," Exemption 3 withholdings—the type at issue—"are sometimes amendable to more categorical treatment." *Id.* at *3–4. However, the Court clarified, a "no number, no list" response only suffices in "unusual circumstances" and where a "particularly persuasive affidavit" accompanies it. *Id.* at *4 (quoting *ACLU v. CIA*, 710 F.3d 422, 433 (D.C. Cir. 2013)). Applying those principles, the Court held that the Department was "not necessarily required to produce a *Vaughn* index in this case," nor was it "necessarily required to justify its Exemption 3 withholdings on a document-by-document basis." *Id.* at *5. The withheld records, in other words, were "amendable to categorical treatment." *Id.* Nevertheless, the Court concluded that the Department "ha[d] not yet done enough to justify its withholdings." *Id.* Among other deficiencies, the Department had not explained who determined that the withholdings were

necessary and appropriate and had not described the nature of the review that led to that determination. *Id.* at *6. The Court further noted that the Department had not adequately substantiated its justification for providing a no number, no list response: namely, that doing otherwise would reveal information protected by the INA. *Id.* at *7. In light of the possible permissibility of the Department's approach but its failure adequately to justify it, the Court offered the Department an opportunity to renew its motion. *Id.*

Taking up the Court's invitation, the Department renewed its motion for summary judgment several months later. Dkt. 26. But before briefing on the motion was complete, the Department changed course, withdrawing its renewed motion and noticing its intent to provide a draft *Vaughn* index to Zynovieva, Dkt. 31 at 1, which it ultimately did, Dkt. 32 at 1. After receiving the *Vaughn* index, Zynovieva opted to stop pursuing the case on the merits. *Id.*

Zynovieva now seeks an award of attorneys' fees and costs to the tune of $125,425. Dkt. 39 at 1. For the reasons explained below, the Court will **DENY** that motion.

## II.  ANALYSIS

Under 5 U.S.C. § 552(a)(4)(E)(i), the Court "may assess . . . reasonable attorney fees and other litigation costs reasonably incurred" by a FOIA plaintiff who "has substantially prevailed." The test for an award of fees "has two components: eligibility and entitlement." *Gerhard v. Fed. Bureau of Prisons*, 258 F. Supp. 3d 159, 165 (D.D.C. 2017). "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (quoting *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 470 F.3d 363, 368 (D.C. Cir. 2006)). "If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Id.* (emphasis in original). "To obtain attorneys' fees under FOIA, a plaintiff must satisfy" both

prongs of the test.  *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014).

Moreover, if the plaintiff establishes that she is both eligible for and entitled to fees, she must

demonstrate that the award sought is "reasonable."  *See* 5 U.S.C. § 522(a)(4)(E)(i); *see also Elec.

Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 197 F. Supp. 3d 290, 293 (D.D.C. 2016).

## A.    Eligibility

A plaintiff can "substantially prevail" in a FOIA lawsuit—and thus become eligible for

fees and costs—in two ways: (1) through a court order that "constitutes judicial relief on the

merits," *Campaign for Responsible Transplantation v. FDA*, 511 F.3d 187, 194 (D.C. Cir. 2007),

or (2) through "a voluntary or unilateral change in position by the agency," as long as the

requester's claim is "not insubstantial," 5 U.S.C. § 552(a)(4)(E)(ii)(II).  Only the second avenue

to relief is at issue here.

This prong of the statute—requiring a voluntary or unilateral change in position by the

agency—embodies what is called "catalyst theory."  *Grand Canyon Tr. v. Bernhardt*, 947 F.3d

94, 96 (D.C. Cir. 2020).  The critical question under this theory of relief is whether the plaintiff's

litigation "substantially caused the government to release the requested documents before final

judgment."  *Brayton*, 641 F.3d at 524–25; *see also Weisberg v. Dep't of Just.*, 745 F.2d 1476,

1496 (D.C. Cir. 1984) ("It is well established in this circuit that this inquiry is largely a question

of causation.").  The plaintiff bears the burden of making this causal showing.  *Grand Canyon

Tr.*, 947 F.3d at 97.  To do so she must demonstrate that "it is more probable than not that the

government would not have performed the desired act absent the lawsuit."  *Id.* (quoting *Pub.

Citizen Health Rsrch. Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990)).  "[T]he mere filing

of the complaint and the subsequent release of the documents is insufficient to establish causation,"

*Weisberg*, 745 F.2d at 1496, and "'[s]omething more than [p]ost hoc, ergo propter hoc' must be

offered," *WP Co. LLC v. U.S. Dep't of State*, 506 F. Supp. 3d 11, 16 (D.D.C. 2020) (quoting *Cox v. Dep't of Just.*, 601 F.2d 1, 6 (D.C. Cir. 1979)).

There is no bright-line rule defining just what it means to "substantially prevail" in a FOIA case under the voluntary or unilateral change in position provision.  That said, the D.C. Circuit has explained that under the "judicial order" provision of the statute, a plaintiff substantially prevails if there is a "judicially sanctioned change in the legal relationship of the parties." *Edmonds v. FBI*, 417 F.3d 1319, 1322 (D.C. Cir. 2005) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001)).  Put differently, a plaintiff must "succeed on any significant issue in litigation which achieves some of the benefit [she] sought in bringing the suit." *Id.* at 1326 (quoting *Farrar v. Hobby*, 506 U.S. 103, 109 (1992)).  This often means a court order requiring the production of documents previously withheld.  But it need not always; courts have also found plaintiffs eligible for fees based on other kinds of judicial relief, such as orders requiring production of documents on an expedited schedule. *Id.* at 1323–24.  Not every judicial order entitles a plaintiff to fees and costs, however, and mere "procedural" orders, rather than those that offer "substantive" relief, do not suffice. *Campaign for Responsible Transplantation*, 511 F.3d at 196 (quoting *Davy v. CIA*, 456 F.3d 162, 165 (D.C. Cir. 2006)).  The reason is that a court ordering an agency to take some *procedural* step—a scheduling order, or an order to produce a *Vaughn* index—is not in any real sense relief on the *merits*. *See id.* ("*Vaughn* indices are not properly understood as relief on the merits for a FOIA plaintiff."); *Oil, Chem. & Atomic Workers Union v. Dep't of Energy*, 288 F.3d 452, 458–59 (holding that a "scheduling order[]" is not "judicial relief on the *merits* of the . . . complaint" (emphasis in original)).

6

The D.C. Circuit has never applied the distinction between procedural orders and substantive relief in a FOIA case in which a request for fees and costs is based on an agency's voluntary action, but in *Mobley v. Department of Homeland Security*, 908 F. Supp. 2d 42 (D.D.C. 2012), Judge Howell suggested that similar notions apply in this context.  She observed that although, in general, "a FOIA plaintiff relying on the catalyst theory must receive records responsive to its request in order . . . to have 'substantially prevailed,'" plaintiffs "must sometimes obtain interim relief that is antecedent or incident to any dispute about the production or non-production of records themselves."  *Id.* at 47.  In her view, a plaintiff who obtains such relief "by way of a voluntary and unilateral change in the agency's position" could reasonably be said to have "substantially prevailed."  *Id.* at 47–48.  But Judge Howell was clear that such relief still must be substantive and on the merits, affirming that "a FOIA plaintiff must obtain the essential elements of the relief that it seeks in its complaint in order to substantially prevail."  *Id.* at 48.

Zynovieva offers two theories for why she has substantially prevailed in this litigation.  First, she argues that she substantially prevailed because her "persistence in this litigation drove [the Department] to produce a *Vaughn* index."  Dkt. 39-1 at 8.  This is relief on the merits, she maintains, because she "induc[ed]" the Department "to back off from its unsupportable 'no number, no list' response."  *Id.*  Second, she contends that her lawsuit caused the Department to release the three documents that she received.  *Id.* at 7–8.  She points out that she filed her complaint only after the Department had failed to provide any substantive response to her FOIA request for three months.  *Id.*  And even then, it took the Department four months more to produce the three documents.  *Id.* at 8.  In her view, this timeline demonstrates that her lawsuit was the catalyst for the Department's production.  The Court disagrees on both fronts.

1.    *Vaughn Index*

Zynovieva's first argument fails because the Department's voluntary production of a *Vaughn* index did not afford her substantive relief on the merits.  In *Campaign for Responsible Transplantation v. FDA*, 511 F.3d 187 (D.C. Cir. 2007), the D.C. Circuit squarely held that "an order compelling the production of a *Vaughn* index, without more, is not enough to make a plaintiff a 'prevailing party' sufficient to support a claim for attorney's fees."  *Id.* at 196; *see also Nw. Coal. for Alts. to Pesticides v. EPA*, 275 F. App'x 10, 11 (D.C. Cir. 2008) (same).  It explained that "[t]he principal purpose of a *Vaughn* index" is procedural—"to facilitate the litigation process"—and a *Vaughn* index does not "change the legal relationship between the plaintiff and the defendant."  *Campaign for Responsible Transplantation*, 511 F.3d at 196.  An order to produce a *Vaughn* index, accordingly, is not relief "on the merits."  *Id.*  The Court sees no reason why this holding would not also apply to the situation here, where the Department voluntarily provided a *Vaughn* index, rather than producing one under court order.

Zynovieva's efforts to distinguish *Campaign for Responsible Transplantation* are not convincing.  She finds it significant that she "specifically requested a *Vaughn* index" after the Department failed to provide one.  Dkt. 39-1 at 9 (emphasis omitted).  It is not.  To see why, imagine that, in response to her request, the Court had issued an order requiring the Department to prepare a *Vaughn* index.  Under *Campaign for Responsible Transplantation*, that would not satisfy the eligibility prong of the test.  511 F.3d at 190 (noting that the plaintiff in that case also "moved for a *Vaughn* index").  Zynovieva fails to explain why the fact that the Department volunteered the *Vaughn* index imbues her request for it with greater legal significance than the D.C. Circuit accorded the plaintiff's analogous request in *Campaign for Responsible*

*Transplantation*.  Plaintiffs request things all the time in litigation, but not everything they ask

for amounts to substantive relief on the merits.

 Next, Zynovieva argues that, unlike the plaintiff in *Campaign for Responsible*

*Transplantation*, she did not "ultimately seek the release of documents" in addition to the

*Vaughn* index.  Dkt. 39-1 at 9; *see also* Dkt. 42 at 14–15.  That is incorrect.  The release of

documents is exactly what Zynovieva asked for in her complaint.  Dkt. 1 at 5 (Compl.).  What is

more, the purpose of her request for a *Vaughn* index in her cross-motion for summary judgment

was to facilitate the release of more documents.  Dkt. 16-1 at 6 ("Plaintiff requests that this Court

order Defendant to produce a Vaughn index *so that the Court can determine whether Defendant*

*owes Plaintiff further documents*." (emphasis added)).

 More importantly, the Court fails to see why it matters that Zynovieva chose not further

to pursue her FOIA litigation after she received the *Vaughn* index.  Zynovieva seems to believe

that her decision to end the litigation after receiving the *Vaughn* index turned receipt of the

*Vaughn* index into relief on the merits, even if it would not have been had she continued to

litigate.  *See* Dkt. 39-1 at 10; Dkt. 42 at 14–15.  This is so, she insists, because she was able to

glean all she needed to further her pursuit of a visa from the *Vaughn* index and thus to achieve

the goal of her FOIA request.  Dkt. 39-1 at 10; Dkt. 42 at 14–15.  That the *Vaughn* index proved

helpful to Zynovieva's broader purposes is salutary.  But it still does not follow that when

Zynovieva received the index she prevailed on the merits.  Learning something useful in the

course of a FOIA lawsuit is not the same thing as obtaining the "essential elements of the relief"

sought in one's complaint.  *Mobley*, 908 F. Supp. 2d at 48.

 Zynovieva's argument also proves too much.  If whether a plaintiff substantially prevails

in a case turned purely on the subjective utility that the plaintiff might derive from a pleading or

other litigation device, all manner of entirely unsuccessful plaintiffs could be eligible for attorneys' fees. A plaintiff could bring a FOIA case seeking information on classified intelligence activities not with the goal of receiving documents but instead hoping to learn whether the government would issue a *Glomar* response, withhold documents under a FOIA exemption, or respond in some other way. Whatever the government did, the plaintiff would learn something and would achieve his goals. Under Zynovieva's position, that plaintiff would be able to obtain attorneys' fees and litigation costs—even if he received nothing that he asked for in his complaint and even though he knew going in that he would never receive the agency records he requested. The Court declines to read the phrase "substantially prevailed" in such an odd—and unsupported—manner. 5 U.S.C. § 552(a)(4)(E).

In a final attempt to salvage her argument, Zynovieva points out that in addition to asking for the production of specific documents, her complaint requested "[t]hat the Court provide further relief as it deems appropriate, just, and equitable." Dkt. 1 at 5 (Compl.). That phrase, she asserts, should be understood to encompass the *Vaughn* index, and, accordingly, her receipt of the *Vaughn* index should be understood as obtaining the substantive relief she sought in this case. Dkt. 42 at 13. This makes far too much of boilerplate language included in almost every complaint. FOIA creates a cause of action to compel a recalcitrant agency to produce records that it has "improperly withheld," 5 U.S.C. § 552(a)(4)(B), not to compel production of a *Vaughn* index, and the former is, in fact, the claim that Zynovieva asserted in this case. Dkt. 1 at 1 (Compl. ¶ 1). Indeed, even at the summary judgment stage she framed her request for a *Vaughn* index only as a means of achieving that goal. Dkt. 16-1 at 6. Zynovieva cannot at this point evade D.C. Circuit precedent by recasting the case as one about a *Vaughn* index.

2.      *Release of Documents*

The problem with Zynovieva's second theory is not the lack of substantive relief but instead causation: she has failed to carry her burden of showing that "it is more probable than not that the government would not have" released the documents "absent the lawsuit." *Grand Canyon Tr.*, 947 F.3d at 97 (internal quotation marks and citation omitted).[1]

Zynovieva's contention that her lawsuit caused the Department to respond to her FOIA request and to release three documents boils down to an inference she draws from the timeline of events alone. As she recounts, after she submitted her request to the Department, she did not receive a substantive response for 64 business days, three times the number of days by which the Department was statutorily obligated to respond. Dkt. 42 at 1; *see* 5 U.S.C. § 552(a)(6)(A)(i) (requiring a response within twenty business days). Then, after she filed her complaint, the Department took four additional months to produce any documents. Dkt. 39-1 at 7–8. From this sequence, and based on the Department's sparse explanation for the delay, she asks the Court to infer that she would not have received the documents that she did had she not filed suit. *Id.*; Dkt. 42 at 5–9.

This line of argument runs headlong into the well-established rule of law (and logic) that "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." *Weisberg*, 745 F.2d at 1496; *see also Pub. Law Educ. Inst. v. U.S. Dep't of Just.*, 744 F.2d 181, 184 n.5 (D.C. Cir. 1984) ("While the temporal relation between a[] FOIA

---

[1] At times Zynovieva conflates the issue of causation with the issue of substantially prevailing. There is no doubt that the litigation caused the Department to provide the *Vaughn* index, and there is no doubt that receiving withheld records can amount to substantive relief on the merits. The difficulty is that for a theory of eligibility to succeed, the plaintiff must establish both causation and substantive relief on the merits. Zynovieva's problem is that the *Vaughn* index is not relief on the merits, and she has not shown that her lawsuit caused the release of documents.

action and the release of documents may be taken into account in determining the existence *vel non* of a causal nexus, timing, in itself or in conjunction with any other particular factor, does not establish causation as a matter of law."). A plaintiff must show "something more." *Cox*, 601 F.2d at 6. And "[t]hat something more is missing here." *WP Co. LLC*, 506 F. Supp. 3d at 16. The Department has represented that visa records submitted by an applicant to the Department— such as the records released here—"are not considered confidential vis-a-vis that individual," Dkt. 15-3 at 8 (Stein Decl. ¶ 18 n.5), and, significantly, that it "shares with FOIA requesters any record a requester provides to the Department" as a matter of course, Dkt. 26-3 at 9 (Grewe Decl. ¶ 16). Zynovieva has not given the Court any basis to doubt the veracity of these statements, which the Court presumes were made in good faith. *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). So there is good reason to believe that the Department would have released these documents to Zynovieva in due course, even if she had never brought suit.

Although Zynovieva recognizes the difficultly with post hoc, ergo propter hoc reasoning, she maintains that the length of the delay in this case and the lack of an explanation for this delay from the Department support an inference of causation. Prior decisions from this Court have recognized that "a significant delay by the agency in complying with FOIA may provide the 'inference that the agency forgot about, or sought to ignore, a FOIA requester's request—and in such a case an award of [FOIA] costs and fees would be appropriate.'" *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 41 (D.D.C. 2016) (alteration in original) (quoting *Harvey v. Lynch*, 178 F. Supp. 3d 5, 8 (D.D.C. 2016)). Similarly, "an agency's sudden acceleration in processing a FOIA request [after a complaint is filed] may lead to the conclusion that the lawsuit substantially caused the agency's compliance with FOIA." *Id.* (internal quotation marks omitted).

12

Here, however, the delay was not so significant as to give rise to an inference that the Department "forgot about, or sought to ignore" Zynovieva's request. *Harvey*, 178 F. Supp. 3d at 8. By the Court's count, the time between the initial submission of Zynovieva's request and her receipt of documents was just under 150 business days. *Zynovieva*, 2021 WL 3472628, at *1. That is, no doubt, much longer than she should have had to wait—and longer than FOIA contemplates. But some amount of delay in excess of the statutory limit is, regrettably, a common feature of the FOIA process, and a delay of even half a year does not, in the Court's view, suffice on its own to counter the Department's evidence that, when asked, it provides a FOIA requester with any records that the requester submitted to the Department. *See Harvey*, 178 F. Supp. 3d at 8 ("'[B]oth the plethora of [FOIA] cases pending before federal agencies at any given time[ ] and the time-consuming nature of the search and decision process' would make a strict-liability rule for agencies that miss the 20-day FOIA deadline both unnecessarily harsh and potentially quite expensive." (second and third alteration in original) (quoting *Cox*, 601 F.2d at 6)). Nor was there a "[s]udden acceleration" of action on the Department's part after Zynovieva filed a complaint of the sort that has been found probative in other cases. *Terris, Pravlik & Millian, LLP v. Ctrs. for Medicare & Medicaid Servs.*, 794 F. Supp. 2d 29, 38 (D.D.C. 2011); *see also Dorsen v. SEC*, 15 F. Supp. 3d 112, 119 (D.D.C. 2014). To the contrary, it took the Department several more months to make its production, so "[i]t seems more likely, in fact, that the documents would have been processed in the same manner, with the same result, regardless of whether litigation was filed." *WP Co. LLC*, 506 F. Supp. 3d at 17 (internal quotation marks omitted). The Court does not mean to suggest that the Department should be rewarded for not speeding things up, merely that its failure to do so cuts against the causal inference that Zynovieva asks the Court to draw.

This is admittedly a closer question than in some cases.  As Zynovieva points out, in other cases in which courts have found plaintiffs ineligible for fees simply because the agencies did not respond until after the plaintiffs filed suit, the agencies typically provided more explanation for the delay that occurred than the Department has provided here.  In *WP Company LLC v. U.S. Department of State*, 506 F. Supp. 3d 11 (D.D.C. 2020), for instance, the Department had contacted the plaintiff before the plaintiff had sued to say that it was "process[ing the request] as quickly as possible" and provided a declaration in litigation averring that it had handled the request "as quickly as it could."  *Id.* at 16–17 (internal quotation marks omitted).  And the delay in that case was half as long as that at issue here.  *Id.* at 13–14. Similarly, in *Harvey v. Lynch*, 178 F. Supp. 3d 5 (D.D.C. 2016), where the delay was also roughly half of that in this case, the agency provided a declaration stating that it initiated a search regarding the plaintiff's FOIA request "shortly after [he] submitted [it]," and the court concluded that "the bulk of the work to process [the] FOIA request had already been completed by the time [the plaintiff] filed suit."  *Id.* at 7–8.  The Department has not provided similar assurances here.[2] So it is on weaker ground than were the defendants in those prior cases.[3]

---

[2] In the Department's answer to the complaint, it asserted that on October 24, 2019, only 35 business days after Zynovieva submitted her request, the Department spoke to Zynovieva's counsel by phone and "confirmed that processing of [her] request was in progress."  Dkt. 9 at 3 (Answer ¶ 9).  This would seem to be additional evidence that the Department was neither ignoring nor had forgotten about Zynovieva's request.  But, for reasons best known to the Department, it chose not to mention these facts in opposition to Zynovieva's motion.

[3] Zynovieva also cites to *Dorsen v. SEC*, 15 F. Supp. 3d 112 (D.D.C. 2014) and *Electronic Privacy Information Center v. United States Department of Homeland Sec.*, 218 F. Supp. 3d 27 (D.D.C 2016), *see* Dkt. 39-1 at 11, but those cases are distinguishable.  It was critical to the *Dorsen* eligibility determination that, prior to the plaintiff's lawsuit, the agency had asserted that it would withhold under a FOIA exemption the documents it ultimately produced in litigation. 15 F. Supp. 3d at 120.  The Department did nothing similar in this case.  And in *Electronic Privacy Information Center*, the agency conceded that it "accelerated the search for responsive records" after the suit was filed, 218 F. Supp. 3d at 42 (internal quotation marks omitted), and

Still, Zynovieva's purely temporal argument falls short.  "[T]here is no presumption in favor of awarding fees to litigants who ultimately receive documents." *Hall & Assocs. v. U.S. Env't Protect. Agency*, 210 F. Supp. 3d 14, 19 (D.D.C. 2016) (citing *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 713–14 (D.C. Cir. 1977)).  And it is Zynovieva's burden to show that it is more likely than not that her litigation caused the release of documents, not the Department's burden to prove otherwise. *Grand Canyon Tr.*, 947 F.3d at 97.  Notwithstanding the Department's minimal explanation of its treatment of Zynovieva's request, Zynovieva's reliance entirely on timing—when considered in light of the Department's repeated communications with her prior to her lawsuit, Dkt. 1 at 2–3 (Compl. ¶¶ 7, 9), and avowed policy of releasing the kinds of documents that it ultimately released, Dkt. 26-3 at 9 (Grewe Decl. ¶ 16)—fails to convince the Court that the Department was not going to respond to her request in the way that it did absent her lawsuit.[4]

## B.   Entitlement

Even if Zynovieva were eligible for fees and costs, the Court would conclude that she is not entitled to them.  In deciding whether a FOIA plaintiff is entitled to fees and costs, the Court must weigh four factors: "'(1) the public benefit derived from the case; (2) the commercial

---

the court found it "hard to believe that [the agency] would ever have gotten the job done without the Court's supervision," *id.* at 43.  The same cannot be said here.  Moreover, on the Court's reading, *Electronic Privacy Information Center* essentially shifted the burden of proof to the agency on the issue of causation without saying so, an approach at odds with D.C. Circuit precedent, *see Grand Canyon Tr.*, 947 F.3d at 97.

[4] The Court notes that Judge Randolph on the D.C. Circuit, *Grand Canyon Tr.*, 947 F.3d at 98–100 (Randolph, S.J., concurring in the judgment), and Judge Berzon on the Ninth Circuit, *First Amend. Coal. v. U.S. Dep't of Just.*, 878 F.3d 1119, 1130–38 (9th Cir. 2017) (Berzon, J., concurring in the judgment), have argued that the catalyst theory interpretation of 5 U.S.C. § 552(a)(4)(E) is at odds with that provision's text, and that a correlation between filing a lawsuit and receiving documents alone satisfies the statute.  Causation, in their view, is unnecessary.  That position, however, is not the law in this circuit.  *Grand Canyon Tr.*, 947 F.3d at 95–97.

benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the

reasonableness of the agency's withholding' of the requested documents." *McKinley*, 739 F.3d

at 710 (quoting *Tax Analysts v. U.S. Dep't of Just.*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)).

"[T]he first three factors assist a court in distinguishing between requesters who seek documents

for public informational purposes and those who seek documents for private advantage." *Davy*

*v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008).  The fourth factor, in contrast, considers whether

the agency's position "had a reasonable basis in law," *Tax Analysts*, 965 F.2d at 1096, and asks

whether the agency was "recalcitrant in its opposition to a valid claim or otherwise engaged in

obdurate behavior," *McKinley*, 739 F.3d at 712 (internal quotation marks omitted).  The Court

takes each factor in turn, combining factors two and three as courts typically do.  *Id.* at 711.

   As for Factor 1, there is no discernable public benefit from this case.  Analysis of this

factor focuses on "the specific documents at issue in the case at hand," *Cotton v. Heyman*, 63

F.3d 1115, 1120 (D.C. Cir. 1995), and asks whether "the complainant's victory is likely to add to

the fund of information that citizens may use in making vital political choices," *id.* (quoting

*Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979)).  The documents Zynovieva sought—both

her visa applications, which she received, and the Department's internal materials related to her

applications, which she did not—are very unlikely to add to the public's reservoir of vital

information.  They matter to Zynovieva for obvious reasons, but the Court doubts that they

matter to anyone else.  And in fact, it appears that the documents Zynovieva received were

provided to her lawyer, pursuant to a privacy release that Zynovieva executed, so those

documents are not available to the public even if the public wanted to review them.  Dkt. 15-3 at

12, 14 (Def.'s Ex. 1).  Zynovieva's only rejoinder is that there is a public benefit in successfully

holding the Department to its FOIA obligations.  Dkt. 39-1 at 15–17; Dkt. 42 at 16.  Perhaps so,

but, as explained, the relevant inquiry concerns the informational value of the documents sought, not the public interest in government according to law.  *See Cotton*, 63 F.3d at 1120 ("When a litigant seeks disclosure for . . . personal reasons, an award of fees is usually inappropriate.").

Moving to Factors 2 and 3, although Zynovieva lacked a commercial interest in the litigation, she clearly "ha[d] 'sufficient private incentive to seek disclosure' of the documents without expecting to be compensated."  *McKinley*, 739 F.3d at 711 (quoting *Davy*, 550 F.3d at 1160).  As she explains, she initially filed her FOIA request and later brought suit to obtain information that would allow her to "adequately prepare for her next visa interview."  Dkt. 39-1 at 10; Dkt. 42 at 16 (noting that she sought documents from the Department "to ensure that her next visa application addressed the issues of most concern to the Government").  The Court appreciates the importance of that interview to Zynovieva.  But that is the point: Zynovieva stood to benefit significantly from the information she sought, so she had ample reason to bring the case, even if at her own expense.

Factor 4, by contrast, favors Zynovieva—or would favor Zynovieva if the Court had concluded that she was eligible for fees and costs (it did not).  As explained above, Zynovieva's eligibility argument based on the *Vaughn* index is a nonstarter.  So if, contrary to the Court's holding, she is eligible, it would have to be because of the three documents that she received.  If that much is assumed, the question becomes whether the government had a reasonable basis for withholding those documents.  Because the parties "never engaged in any substantive motions practice" regarding the documents, *Am. Oversight v. U.S. Dep't of Just.*, 375 F. Supp. 3d 50, 67 (D.D.C. 2019), and because the Department represents that it "shares with FOIA requesters any record a requester provides to the Department," Dkt. 26-3 at 9 (Grewe Decl. ¶ 16), the Court's analysis is limited to whether the Department had a reasonable basis in law for not providing

those documents to Zynovieva within twenty days, as the statute requires.  5 U.S.C.
§ 552(a)(6)(A)(i).

Presented with a similar question in *Davy v. CIA*, 550 F.3d 1155 (D.C. Cir. 2008), the
D.C. Circuit said that "[a]bsent evidence that the agency had a reasonable basis for failing to
respond" to a FOIA request prior to litigation, this factor weighs in favor of the plaintiff.  550
F.3d at 1163.  It later clarified in *Morley v. CIA*, 894 F.3d 389 (D.C. Cir. 2018), that FOIA "does
not suggest that an award of attorney's fees should be automatic" where an agency fails to
respond to a FOIA request within the statutorily authorized timeline, and the court in fact held in
*Morley* that a district court "reasonably concluded that the agency had a reasonable basis for
missing the 20-day deadline." *Id.* at 393.  Here, the Department's explanation for its failure to
timely respond to Zynovieva's request is scant: it has offered nothing but one statement to
Zynovieva on the phone that her request was "complex."  Dkt. 1 at 3 (Compl. ¶ 9).  That is not
the sort of reasonable explanation Factor 4 requires, so this factor weighs in Zynovieva's
direction.[5]

Taking all of this together, the Court concludes that the balance of interests tips against
Zynovieva.  She instituted this action for a private purpose, and no part of it redounds to the
public benefit.  And although the Department failed adequately to justify its less-than-
expeditious response to her FOIA request, this factor weighs less heavily in this case than it
might in others.  The Department was neither "recalcitrant" nor "obdurate;" it simply acted more

---

[5] Lest there be any confusion, the Court's conclusion as to Factor 4 of the entitlement analysis
does not imply that it should have reached the opposite result regarding whether Zynovieva's
lawsuit caused the Department to release documents.  Zynovieva bore the burden of
demonstrating *causation* in the latter analysis, whereas *Davy* suggests that the agency is
obligated to offer some explanation for why it did not respond more quickly to Zynovieva's
request to prevail on the former.  The two inquiries thus involve different questions on which
opposite parties were required to convince the Court.

slowly than it should have.  *McKinley*, 739 F.3d at 713.  That alone is not enough to overcome

the much more clear-cut valence of the other factors.  Thus, even if the Court had held that

Zynovieva was eligible for fees and costs—and it held the opposite—it would decline to award

them in any event.   The Court notes in closing, however, that although the Department prevailed

on the eligibility question in this case, it would be well advised in future cases to provide more

robust explanations when it fails to provide documents in a timely manner.

## CONCLUSION

For these reasons, it is **ORDERED** that Plaintiff's motion for attorneys' fees, Dkt. 39, is

**DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 31, 2023